### SHIPLEY v. KOMER.
#### Civ. No. 770–M.

District Court, S. D. Florida, Miami Division.

April 23, 1945.

Abe Aronovitz, of Miami, Fla., for plaintiff.

Dewey Knight (of Knight, Underwood & Cullen), all of Miami, Fla., for defendant.

DE VANE, District Judge.

This is a suit to recover for personal injury sustained by the plaintiff as a result of being struck by an automobile operated by the defendant. The complaint alleges that on the 4th day of January, 1939, at about 10:30 p. m., plaintiff was walking "easterly along the northerly side of that certain road, situate, lying and being in Broward County, Florida, commonly known as Hallandale Beach Road." It further alleges that the defendant was driving his automobile easterly along said road and ran the plaintiff down, severely injuring him and that as the result of the injury received by plaintiff he suffered a concussion of the brain, a fractured skull, a. tumor or blood clot on the brain and other injuries.

The defendant interposed nine defenses. The fourth, fifth, sixth, seventh, and eighth defenses set up a release executed by the plaintiff shortly after the accident. A separate trial was had on the issue raised by these defenses and the Court found that plaintiff was suffering from amnesia at the time he executed the release and that same, therefore, was not binding upon him. The case is now before the Court on the merits.

Defendant interposed three defenses to the merits: (1) the defense of not guilty; (2) that plaintiff was guilty of contributory negligence; and (3) that plaintiff ratified and affirmed the release specifically pleaded and set forth in other defenses interposed.

As pointed out above, plaintiff alleges in the complaint that at the time of the accident he was walking along the northerly side of the paved portion of the highway, in an easterly direction and he testified to the same effect at the trial. The paved portion of Hallandale Beach Road is approximately 16 to 18 feet in width. Plaintiff testified that he was walking off the paved portion of the road on the northerly side thereof at the time he was run down by the defendant. Defendant testified that he was driving along the southerly side of the highway at a moderate rate of speed when plaintiff, without looking, started to cross to the south side of the road, that plaintiff walked into the side of his car and that the accident was due entirely to the contributory negligence of the plaintiff. Defendant's wife and other witnesses who were in the car with the defendant corroborate this testimony of the defendant.

From other evidence produced at the trial the Court finds that both the plaintiff and the defendant were mistaken as to how the accident happened. The parties are agreed that within one minute or less before plaintiff was struck by the defendant's car that an automobile going in a

westerly direction along the Hallandale Beach Road passed both the plaintiff and the defendant. Plaintiff testified that he was off the pavement on the northerly side of the road when the car going in a westerly direction passed him and this testimony is not disputed by any of the witnesses produced by the defendant.

Plaintiff's memory as to what occurred from that time on is very hazy. He testified that he saw the lights of another approaching car, traveling in a westerly direction, about a quarter of a mile down the road and that he saw some black object lying in the road near him and that he took from his pocket a small flashlight to examine the object to ascertain what it was and found it to be a dead bird. He remembers nothing after that until he regained consciousness in a hospital the following day. The testimony of all the witnesses places the carcass of this dead bird near the northerly edge of the paved portion of the road. It was the carcass of a large bird and some of the witnesses thought it was the carcass of a crane. All of the witnesses agree that it was well within the northern half of the road and nearer the northern edge than the center line of the road. The testimony of all the witnesses also establishes the fact that plaintiff was struck at or near the spot where the carcass lay in the road.

A police officer was called to the scene of the accident soon after it occurred and defendant called him as a witness. The officer testified that he arrived at the scene of the accident within a short time after it occurred; that he found the defendant's car on the southerly side of the road in the position where defendant stopped the car after the accident. With the aid of lights from other cars and with his flashlight he was able to trace the skid marks of defendant's car from the point where defendant applied brakes to the point where the car was brought to a stop. His testimony was that the defendant's car was traveling along the center of the road with the left wheels of the car somewhere between one and two feet north of the center line of the road. The skid marks began west of the carcass of the dead bird and continued easterly for several feet, beyond where the car was brought to a stop.

The Court accepts the testimony of the police officer as more accurately describing what actually occurred at the time of the accident than the testimony of the plaintiff or the testimony of the defendant, and other witnesses for the defendant. A careful analysis of the testimony of the police officer satisfies the Court that the defendant was not driving south of the center line of the highway, as testified by him and some of his witnesses, but was driving along the middle of the highway, and that the left wheels of defendant's car were north of the center line of the highway at the time of the impact between plaintiff and defendant's car.

The diagram of the scene of the accident prepared by the police officer (Defendant's Exhibit No. 2) shows that the body of the plaintiff, after being knocked unconscious, lay well within the northern portion of the highway and only a few feet east of the dead bird. The testimony also shows that plaintiff was not struck by the front of the car, but rather that the ventilator window glass of the front door, which extended out, struck some portion of plaintiff's body, and that the top of the car, right at the top of the ventilator window, struck plaintiff's head. Pictures taken of the car the day after the accident show a dent in the top of the car, level with the top of the front door of the car.

Reconstructing what actually occurred from the testimony of all the witnesses the Court is satisfied that as soon as the automobile traveling in a westerly direction along the road passed the plaintiff that plaintiff went back upon the northerly side of the paved portion of the road and when he reached the carcass of the dead bird he walked around the same to the right— there being more room to walk around the same on that side and still stay within the northerly half of the paved portion of the road—and that it was at this point that defendant's car struck the plaintiff. The fact that plaintiff was struck by the ventilator window and the top of the automobile, instead of by the front fender, convinces the Court that he was veering to the right to pass the object in the road just as defendant's automobile reached the point where he was in the highway. The fact that defendant applied his brakes several feet west of the dead bird also convinces the Court that the plaintiff began to veer to the right to pass the object in the road while the car of the defendant was still some distance behind him. Whether or not any liability attaches to the defend-

ant for the accident will be determined upon this summary of the evidence as to the manner in which the Court finds the accident actually happened.

A Florida Statute, Title XXII, Sec. 317.25, F.S.A., requires the operator of an automobile to operate his car upon the right half of the roadway, with certain exceptions not important here. The Supreme Court of Florida has held that a pedestrian has equal rights with an automobile driven upon the highway. The Supreme Court of Florida has also held that the driver of an automobile is required to exercise reasonable care to avoid injury to others lawfully upon the highway. See Florida Motor Transport Co. v. Hillman, 87 Fla. 512, 101 So. 31. The Court holds, upon this authority, that defendant was guilty of negligence in operating his automobile on the wrong side of the highway at the time of the accident in this case.

The Court knows of no Statute in Florida that requires a pedestrian using a public highway to walk facing traffic at night, although this is common practice and is what plaintiff was doing, as he had the right to do, on the night of the accident. Contributory negligence is a complete defense in Florida in a case of this character and this case presents the question of whether the action of the plaintiff at the time of the accident constituted contributory negligence.

In Mathers v. Botsford, 86 Fla. 40, 97 So. 282, 32 A.L.R. 881, the Supreme Court of Florida held that where a party walking along the public road at night was run down by an automobile traveling in the same direction he was not guilty of contributory negligence and was entitled to recover despite the fact that he stayed on the highway and the defendant was blinded by the lights of an approaching automobile traveling in the opposite direction, which made it impossible to see the plaintiff on the highway. In that case the Supreme Court of Florida said: "Pedestrians have rights in the proper use of public roads for traveling, and drivers of vehicles should exercise due care so as not to injure others."

In Florida Motor Transport Co. v. Hillman, supra, the accident there involved occurred very much in the same manner as did the accident in this case, except that the accident in that case occurred in the daytime instead of at night. The sec-

ond count of the declaration in that case alleges that the plaintiff stopped his automobile on the right-hand side of the road facing south, that he was on the left-hand side of the machine, that he "stepped back from his said automobile about 18 inches, but was still to the right of the middle of said road" [87 Fla. 512, 101 So. 32] when the defendant ran its bus negligently upon the plaintiff. While the pleas of contributory negligence were stricken by the trial court and this action of the Court was not assigned as error on appeal in that case, nevertheless, under the law of Florida if the testimony of the plaintiff supported this allegation of the second count of his declaration and his act of stepping back from his automobile had constituted contributory negligence this would have defeated plaintiff's right to recover, even though the trial court had stricken the pleas of contributory negligence. The Supreme Court of Florida affirmed a verdict and judgment in favor of the plaintiff in that case and in so doing, in effect, held that the act of the plaintiff in stepping back from his automobile toward the center of the highway did not constitute contributory negligence as long as he stayed to the right of the middle of the road. Upon the authority of that case the Court holds plaintiff, in this case, was not guilty of contributory negligence in veering to the right to pass around the carcass of the dead bird, as the evidence shows that in so doing he remained, and was struck down by the defendant, within the northern half of the highway.

The third defense interposed to the merits is that plaintiff ratified and affirmed the release executed shortly after the accident and while plaintiff suffered from amnesia as a result of the accident.

The record shows that shortly after the tumor or blood clot was removed from plaintiff's head, and while plaintiff was still in the hospital, he sent for local counsel to discuss his claim for damages against the defendant. This counsel thought himself in no position to handle the case as plaintiff was a resident of the State of New York and defendant was a resident of the State of Michigan, and recommended that plaintiff get other counsel. After returning to New York plaintiff did seek other counsel who attempted to negotiate a settlement with the defendant but defendant stood upon the release executed by the plaintiff and re-

fused to reopen the case. Not being satisfied plaintiff saw a third attorney and testified that he was not advised until he saw this third attorney that it would be necessary for him to refund the $250 paid him in settlement of the case before he could bring suit against the defendant and the record shows that he promptly made the tender, which defendant refused to accept. This all required time and the defense is based upon the elapsed time between the date of the execution of the release and the time the refund was tendered.

Plaintiff is not a lawyer and it was necessary for him to depend upon the advice of counsel as to his obligation to make the refund. The record shows that the refund was tendered promptly upon plaintiff being advised as to his obligation to do so. The tender made to defendant at the time has since been deposited in the registry of this court. Upon all the facts disclosed by the record, touching the matter, the Court holds that this defense is not good in this case, and is not a bar to plaintiff's right to recover against the defendant.

The question of damages in a case of this character always troubles the Court. The evidence shows that as a result of the accident plaintiff suffered a fractured skull and was rendered unconscious for twenty-four hours, more or less. As it was feared a blood clot would form, plaintiff remained in the hospital until January 18, 1939, when he was discharged. On March 14, 1939, he again lost consciousness and was taken to the hospital where he remained in an unconscious condition until an operation was performed and a blood clot, described as being the size of a small orange, was removed from his brain. That the blood clot resulted from the injury plaintiff received is not seriously controverted. The physician participating in performing the operation testified that when he arrived on the scene plaintiff's condition was critical and that an immediate operation was necessary to save his life. He had been allowed to remain in the hospital for approximately thirty-six hours, under observation of the hospital physicians, before a specialist was called in to see him.

Plaintiff responded satisfactorily to the operation and despite his age made a speedy recovery and was able to resume his normal business activities within a few months.

Plaintiff incurred expenses of approximately $2,000 in connection with his hospitalization as a result of the injuries, and lost his earnings for some three or four months amounting to $600, according to the bill of particulars filed in this case. Plaintiff claims permanent injuries, but the testimony shows that such permanent injuries as he now suffers have not, to date, interfered with his earning capacity. Plaintiff is entitled to recover, in addition to the expenses incurred by him and his loss of earnings, something on account of the pain, suffering, nervous shock and such permanent injuries as he suffers, and the Court assesses plaintiff's damages in the sum of $7,500.

Findings of fact, conclusions of law and final judgment will be entered in conformity with this memorandum opinion.